## Unit Vending Corp. v. Lacas

*Fuhrman & Furman*, for plaintiff.
*Rappaport & Lagakos*, for defendants.

ALESSANDRONI, P. J., March 5, 1962.—Plaintiff instituted an action for breach of a contract which had granted plaintiff the exclusive right to maintain a cigarette vending machine in defendant testator Soter's place of business. The contract, which was executed on July 7, 1959, stated that plaintiff had exclusive rights for a period of five years. A check in the amount of $1,000 was given to Soter; this check purported to be consideration for the exclusive rights. Actually the money was for a non interest bearing loan to be repaid from the commissions of the cigarette machine. Defendants' answer denied any breach of contract; denied any liability for loss of profits, and admitted that there was a balance on the loan of $474.36.

The matter came on for trial before Reimel, J., sitting without a jury; the court found for plaintiff in the total amount of $5,202.08, with interest from April 1, 1960. This finding represents a loss of profit of $4,737.04 for 51 months and the balance of the loan. Defendants have filed exceptions.

Soter operated a diner at 816 West Girard Avenue, Philadelphia; the cigarette vending machine in the diner had average monthly sales of 2,944 packs of cigarettes. Plaintiff's profit computed on a bass of $.03155 per package of cigarettes was $92.8832 per month. Soter died January 16, 1960, and in April, 1960, one George Stevens, who took over operation of the diner, ousted plaintiff's machine and had a competitor's installed. Stevens' action was the result of plaintiff's refusal to pay him the commission on the cigarette sales in cash. Plaintiff took the position that it was entitled to continue applying the commission to the balance of the loan until it was paid. Stevens had advised plaintiff's representative that defendants, the executors of the estate, would pay the balance of the loan. Stevens was operating the diner under a

lease from defendants until it was sold in June 1960.

Defendants had offered to prove that Stevens was operating under a lease, that plaintiff refused to pay the commission in cash, that Stevens had advised that defendants as executors of Soter's estate were ready and able to pay the balance of the loan, and that the business was sold. This offer was rejected.

Plaintiff's theory is that a breach of contract occurred when its machine was removed from the premises. This theory completely overlooks the fact of Soter's death. Did his demise constitute a breach of contract? If it did, was plaintiff entitled to loss of profits for the balance of the term?

Ordinarily a contract may be said to survive the death of one of the parties, provided it is not one for personal services or does not partake of the nature of one. Plaintiff's theory would require Soter's estate to continue the operation of the business for 51 months, the balance of the term, or pay plaintiff's profit for that period. Whether or not defendants could actually operate the business is a matter either for the orphans' court, or the terms of the will: Fiduciaries Act of April 18, 1949, P. L. 512, article V, sec. 504, 20 PS §320.504. Since the business was apparently sold by order of the orphans' court, plaintiff cannot assign the cessation of defendant's interest in the business as a breach of contract.

The record fails to disclose that a breach of contract occurred. The contract contains no provision that Soter or his legal successor had to remain in business for five years regardless of any other contingency. Heisman v. Seiss, 196 Pa. Superior Ct. 451. Such a provision would be absurd on its face. Suppose the real estate had been condemned, would plaintiff be entitled to collect its profit for the balance of the term? The logic seems inescapable; the contract could only be effective so long as Soter stayed in business. If that

period exceeded five years, then of course the contract would either terminate or renew according to its terms. But if the operator retires from business completely, what then? It would appear that the moment Soter or his estate went out of business the contract terminated and is no longer enforceable. See Heisman v. Seiss, supra.

But for the purpose of this discussion, we will assume a breach of contract by defendants so that we may consider the question of damages. Plaintiff claims 51 months loss of profit, i.e. the balance of the term, contending that it was unable to mitigate the damages. The testimony on behalf of plaintiff was to the effect that it always had numerous machines available for location and, therefore, it was impossible to mitigate its damages by placing this machine in another location. The argument is that placing this machine elsewhere would not make up the profits lost because the new location could have been filled by one of the excess machines always available. This argument that plaintiff found it impossible to mitigate its damages makes a mockery of the duty imposed. Regardless of the extent of plaintiff's capacity to supply new locations with machines and merchandise, it was only as to this machine that plaintiff had a legal duty. One cannot discharge the duty by giving it lip service; it required affirmative action by plaintiff and its capacity to locate machines becomes irrelevant. Cf. Unit Vending Corp. v. Tobin Enterprises, Inc., 194 Pa. Superior Ct. 470.

Since the record is incomplete as to the actual facts concerning disposition of the business, the matter must be retried so that all of the facts may appear.

### Order

And now, March 5, 1962, defendants' exception to the finding of the court is sustained; a new trial is ordered.